LONGTON v. STEDMAN.

1. EASEMENT—DEEDS—CONSTRUCTION.

Where an easement was reserved by two deeds of conveyance, executed by the owner of an entire parcel to separate grantees, of adjoining portions of the land, about the same time, and where the right of way was used continuously by the grantees of both parcels for a numbers of years afterwards, the conveyances should be construed together to determine the intent of the grantors.

2. SAME—LIGHT AND AIR.

Complainants' predecessors in title reserved a right of way eight feet wide off the north side of the parcel granted and subsequently acquired by complainants. In the same instrument it was stipulated that the grantors would not erect or permit to be erected any buildings on the land north of complainants' parcel nearer than five feet to the line between the properties. Later the grantors conveyed the remaining parcel to defendants by mesne conveyances, in which the same right of way and building restriction was expressed. The 13-foot strip was used jointly for a right of way to reach a barn situated at the rear of the two parcels by the owners of both pieces for considerable time, and defendants finally constructed a building upon the land included in the building restriction. *Held*, that whether this restriction affecting the five-foot parcel was intended to preserve the right to light and air only or was intended to enable the complainants to use it with the eight-foot strip, the court of equity will protect the rights of the complainants.

3. INJUNCTION—EQUITY—PERMANENT STRUCTURE—ADEQUATE REMEDY AT LAW.

An injunction bill lies to restrain the erection of a permanent structure upon a right of way.[1]

4. SAME—DAMAGES.

The fact that defendant's damages in removing a portion of the building would be large and complainants' loss or injury would be small, would not prevent the enforcement of the equitable remedy.

5. EQUITY—LACHES—ESTOPPEL.

No facts amounting to an estoppel or laches were presented by evidence showing that complainants had no knowledge that defendants were erecting a building on the easement, that as soon as they discovered the situation they demanded that it be removed, defendants having completed the structure in about two weeks.

6. SAME.

Mere delay and acquiescence are insufficient to defeat an equitable remedy based on a strict right, unless the acquiescence or failure to act has continued so long as to defeat the right itself.

[1] As to the right to mandatory injunction to compel removal of structure which encroaches on adjoining property, see note in 36 L. R. A. (N. S.) 402.

7. SAME—ACQUIESCENCE.

Some act done upon the strength of delay or some right lost or claim relinquished is essential to estoppel arising from delay in enforcing a right.

Appeal from Kalamazoo; Knappen, J. Submitted April 21, 1914. (Docket No. 99.) Decided October 2, 1914.

Bill by William P. Longton and others against Henry H. Stedman and others for an injunction and other relief. From an order sustaining a demurrer to the bill of complaint, complainants appeal. Reversed.

*Charles L. Dibble,* for complainants.

*Alfred S. Frost* and *D. O. French,* for defendants.

McALVAY, C. J. This is an appeal by complainants from an order sustaining a demurrer of defendants and dismissing the bill of complaint. The facts stated in the bill of complaint necessary to the understanding of the questions involved, and which for the purposes of this case are accepted as true, are as follows: Complainants, husband and wife, are owners, as joint tenants, of part of a certain lot in the city of Kalamazoo, subject to a right of way, described as lot No. 308 of the original plat of the village (now city) of Kalamazoo, except the east 50 feet thereof, and also except 30 feet in width off the north side thereof, together with a certain easement, or right of way, over and upon the premises adjoining said lot upon the north. The dispute in this case arises with reference to this easement.

A plat of portions of the lot belonging to these parties, showing the location of this easement, is given.

The 30 feet on the north side of said lot excepted from complainants' deed is now owned by defendants. The easement runs east and west between the two properties. Both parties to this suit derived title to their respective parts of this lot through mesne conveyances from a common grantor. The only conveyances necessary to be mentioned are those which created the easement and right of way in controversy.

The portion of this lot now owned by complainants was conveyed by James Bauman and wife to Abraham Hanford, a grantor of complainants in the chain of title, by warranty deed on April 21, 1890, and is described as follows:

"Lot numbered 308 of the original plat of the village (now city) of Kalamazoo, as appears of record in the office of the register of deeds for the county of Kalamazoo, excepting and reserving from said description fifty (50) feet from and off the east end of said lot now owned by said first parties, and excepting also thirty (30) feet from and off the north side of said lot, together with a right of way eight (8) feet wide over the premises hereby conveyed, from the front to the rear of said lot just south of said thirty (30) feet. Said first parties also agree that they will not themselves, their heirs, executors, administrators, or assigns, erect or permit to be erected any building on the land next north of that herein conveyed nearer than five (5) feet of the north line

of the premises hereby conveyed, but this shall not interfere with buildings already on the back end of said premises, but is only intended to refer to that portion of the aforesaid thirty (30) feet in front of said buildings and now vacant, together with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining."

The portion of said lot now owned and claimed by defendants was conveyed by warranty deed by said James Bauman and wife to defendants' grantors in chain of title on July 14, 1890, and is described as follows:

"Beginning at the northwest corner of lot No. 308 of the original plat of the village (now city) of Kalamazoo, according to the recorded plat thereof in the office of the register of deeds for the county of Kalamazoo, Michigan, running thence east on the north line of said lot to a point fifty (50) feet from the east end of said lot; thence south thirty (30) feet to the north line of land heretofore sold to Hanford; thence west along the line of said Hanford's land to the east line of Edwards street; thence north to the place of beginning. Also a right of way eight (8) feet wide from front to rear of said lot over the premises just south of the property herein conveyed (heretofore sold by said first parties to Hanford). Said right of way to be along the south line of the thirty (30) feet described herein. Provided said second parties, their heirs, administrators, or assigns, are not to erect any buildings on the front of said lot nearer than five (5) feet of the south line thereof."

Complainants aver that this easement and right of way 13 feet wide between the premises of the parties to this suit was created by these conveyances in April, 1890, and used continuously thereafter as such "by the owners of both lots as a right of way to the barn situated upon the east side of both parcels of land hereinbefore described, which barn was used in common by the occupants of said parcels of land." Complainant Anna Longton derived title to these premises as an heir and by deeds from all the other heirs of

Marinus Ampersee, owner in the chain of title, who died August 20, 1898, in possession of the same, of whose estate Edwin J. Phelps was appointed administrator. At this time the north 30 feet of this lot heretofore described was owned and occupied by a laundry company, which, during November, 1898, and while the said estate was in the course of administration, fraudulently proceeded without notice, and without any knowledge on the part of the administrator or the heirs, to trespass upon and obstruct said right of way and reserved strip, and to erect a building thereon in great haste, and completed said building within a period of two weeks. This brick building was placed upon the south line of the north 30 feet of this lot, covering the entire 5 feet of this easement and right of way existing therein, thereby depriving complainants of, and ousting them from, all rights therein.

The bill of complaint shows that at this time complainants were residents of the State of New York, and had no notice of any kind of the trespasses and wrongs committed and continued by the grantors of defendants. They aver that as soon as knowledge thereof came to them they immediately demanded the laundry company to remove said building, which demand was repeated, and that they have since repeatedly demanded that defendants and their grantors do the same, which requests and demands have been refused, and are still refused.

Complainants aver that this easement and right of way extended from the street line of the lot on the west toward the east along the line dividing these properties, a distance of 80 feet, to the barn referred to, which for years had been jointly occupied by the owners of both parcels of this lot. These properties are situated in the heart of the business district of Kalamazoo. The ground owned by defendants is alleged to be of the value of $7,500, and that of com-

plainants of the value of $10,000. The easement and right in controversy adds materially to the value of complainants' property and to the variety of uses to which it can be put of more than $2,000. Briefly stated, the foregoing are the material facts set forth in the bill of complaint.

Complainants pray for a mandatory and permanent injunction that defendants be compelled and required to remove the building and obstruction to said right of way and easement, and for damages and general relief.

The record shows that after defendants demurred to the bill, and before a hearing was had, complainants asked and were permitted to amend the bill of complaint. Defendants then filed a second demurrer, which, upon the hearing, was overruled by the court and leave given to defendants to answer. About 30 days later the court, of its own motion, set aside the order overruling said demurrer, and entered an order sustaining the same and dismissing the bill of complaint. This is the order from which the appeal is taken by complainants. The demurrer to complainants' amended bill states 18 reasons why it should be dismissed. Such of these as require consideration will be considered.

Defendants raise no question as to the easement established and reserved in the deed to complainants' grantors over the north 8 feet of the land granted to them. They do deny that by the deed to their grantors any easement or right of way was granted to complainants and their grantors; that at most the restriction in that deed amounts merely to a building restriction. We have given the terms of the grant as set forth in the two conveyances which are relied upon to establish it. This lot No. 308 had been divided before any of the conveyances material to this cause were made. It appears from them that 50 feet

off from the east end of the lot had been disposed of to other parties, and that the portion of the lot west of said 50 feet was the only portion embraced in any of these deeds. The deed to complainants conveyed all of that portion of the lot west of this 50 feet, except 30 feet on the north side, and contained the following reservation:

"A right of way 8 feet wide over the premises hereby conveyed from the front to the rear of said lot just south of said 30 feet."

The deed then further recites:

"Said first parties also agree that they will not themselves, their heirs, executors, administrators, or assigns, erect or permit to be erected any building on the land next north of that herein conveyed nearer than 5 feet north of the north line of the premises hereby conveyed."

In the deed to defendants' grantor, which conveyed by metes and bounds, the north 30 feet of this lot was also included:

"A right of way 8 feet wide from front to rear of said lot over the premises just south of the property herein conveyed (heretofore sold by said parties to Hanford) said right of way to be along the south line of the 30 feet described herein."

With the following condition:

"Provided said second parties, their heirs, administrators, or assigns, are not to erect any buildings on the front of said lot nearer than 5 feet of the south line thereof."

These conveyances were made by the same grantors; the first in April, 1890, to complainants' predecessors in title; the second in July, 1890, to those of defendants. It is claimed on the part of defendants that a right of way was reserved from complainants' property, but that only a building restriction was created as to defendants' property. These instruments should be construed together. It is clearly

evident that it was the intention of the parties to both of them to create a right of way for the use of both grantees for the purpose of access by both to buildings in the rear of these premises. It remains to determine the extent and character of the easement. This may be found from the instruments themselves, from the practical construction given by these parties, and from the circumstances existing at the time.

The record shows that after these premises were conveyed to the respective parties occupying these descriptions of land they began and continued the joint use of this strip 13 feet wide for many years as a right of way to and from a barn which was situated 80 feet east of the street line, partly on each of these properties. There can be no dispute from the instruments themselves that a right of way 8 feet wide off from the north end of complainants' land was reserved for the use of the owners of both properties. It is also clear in both instruments that it was agreed that the south 5 feet alongside and north of this right of way was not to be built upon, and was to be forever left open and free. These strips made an alley 13 feet in width, with a clear intention of a joint enjoyment by the owners of the entire width.

Whether the agreement relative to the 5 feet be called part of a right of way or a building restriction is immaterial. Each of these parties was and is entitled to the use and enjoyment of the entire way left open. If the 5-foot strip was for the purpose of granting complainants light and air only, it was set apart in both deeds for the benefit of complainants, and belongs to them. It is clear that the rights of these adjoining owners were in the contemplation of this grantor at the time of making these conveyances and their acceptance, and that these conveyances created in each a substantial right in the strip set apart from the land of the other, which neither could enjoy to the exclusion of the other. Added to this is the

fact that both strips were used together by the grantors as a right of way. We cannot avoid the conclusion that the right sought by complainants to the use of this entire 13 feet in controversy created in them an easement and right which cannot lawfully be violated, and for the protection of which equity will grant relief. 5 Am. & Eng. Enc. Law (2d Ed.), pp. 9, 10, and cases cited.

It is contended by defendants that complainants have an adequate remedy at law. The violation of complainants' rights by the erection of a permanent structure obstructing an easement and right of way created by deed will be relieved by injunction in a court of equity. *Ives* v. *Edison*, 124 Mich. 402 (83 N. W. 120, 50 L. R. A. 134, 83 Am. St. Rep. 329) ; *Tolsma* v. *Scripps Corporation*, 153 Mich. 14 (116 N. W.. 622).

It is also claimed that complainants are not entitled to recovery, by reason of the great expense and inconvenience such recovery would entail in removing the side wall and 5 feet off of the end walls of this building and the comparatively small injury to complainants. The facts appear to be that this building was used when built as a laundry, and is now used as a livery stable; that it was built in two weeks, and is a one-story brick shell roofed over; that it has a wooden floor, with a small office partitioned off in the front part with a wooden partition. The fact that it would be of great expense to the defendants compared with the injury to complainants, therefore, does not appear and is of no consequence, if it were true. The restrictions in the deeds have been violated. The amount of damages complainants have suffered is wholly immaterial. Such restrictions will be enforced. 3 Pomeroy's Equity Jurisprudence (2d Ed.), § 1342.

Defendants also contend that complainants have been guilty of laches, and further that the doctrine

of estoppel applies, and that upon both grounds the bill was properly dismissed. It appears that complainants had no knowledge of the erection of this building which covers the 5-foot strip of land in question, until after it was completed; that as soon as they discovered it, and repeatedly afterwards, they asserted their rights and demanded the removal of the building from such strip. No denial is made of the knowledge of defendants of the restrictions in their deed, but they urge the bare lapse of time and acquiescence to defeat complainants' right.

Complainants seek an injunction in support of a strict legal right. The great weight of the authorities supports the doctrine that in such case mere delay and acquiescence will not defeat the remedy, unless it has continued so long as to defeat the right itself. This rule has been announced by this court in several cases. *McConnell* v. *Rathbun*, 46 Mich. 303 (9 N. W. 426); *Koopman* v. *Blodgett*, 70 Mich. 610 (38 N. W. 649, 14 Am. St. Rep. 527); *Davis* v. *Township of Frankenlust*, 118 Mich. 494 (76 N. W. 1045). In these cases it appears that there were long delays after the cause of action arose, and this court held that the right of action was not barred by such delay.

Upon the question of estoppel there is nothing in the record to indicate that the delay in bringing suit was relied upon by the defendants or their grantors, or any act was done by them upon the strength of such delay, or that by reason thereof defendants will be compelled to surrender, forego, or alter what they or their grantors have done. These are essential elements to an estoppel, no one of which appears in the record in this case. The encroachment and trespass committed by defendants' grantors in unlawfully building this building in spite of the restriction contained in their deed, and thus depriving complainants of the easement granted them in the five feet of

land covered by the building was committed and the building completed without the knowledge or acquiescence of complainants, who from the time they became informed of the encroachment and obstruction erected by defendants' grantors to the time of commencement of suit repeatedly insisted upon their rights both to defendants and their grantors and demanded the removal of such building. There was therefore no acquiescence upon which to base an estoppel.

Defendants have had knowledge of complainants' rights in the premises, and by reason of this delay have been put to no extra expense, and, in case of an adverse decision, will be put to no more annoyance and expense than they would had the suit been brought by complainants immediately after the building was erected. There is therefore no merit in the claim that complainants were estopped.

The order and decree of the circuit court sustaining the demurrer and dismissing complainants' bill of complaint is reversed and set aside, with costs in favor of complainants, to be taxed.

A decree will be entered overruling such demurrer, with permission to the defendants to answer the bill of complaint within 15 days. The case will be remanded to the circuit court for further proceedings.

BROOKE, KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.