574 F.2d 312
 197 U.S.P.Q. 598, 1978-81 Copr.L.Dec. 25,013
 A & M RECORDS, INC., CBS, Inc., Stax Record, Inc., Virginia
Wynette Jones P/K/A "Tammy Wynette" and John R.
Cash P/K/A "Johnny Cash", Plaintiffs-Appellees,
v.
M. V. C. DISTRIBUTING CORPORATION, Sicom Electronics Corp.
and Donald D. Merry, Defendants-Appellants.
 Nos. 76-1843 and 76-1844.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 6, 1977.
Decided and Filed April 7, 1978.
 
 Scott H. Dodge, Draugelis, Ashton & Scully, Plymouth, Mich., Harold W. Milton, Jr., Troy, Mich., for defendants-appellants.
 Asher Rabinowitz, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for plaintiffs-appellees.
 Before PHILLIPS, Chief Judge, and WEICK and EDWARDS, Circuit Judges.
 PHILLIPS, Chief Judge.
 
 
 1
 Plaintiffs[1] brought an action against defendants[2] (hereinafter MVC) for injunctive relief and for damages caused by MVC's unauthorized duplication and distribution of musical recordings produced by plaintiffs. This case involves "pirated" or "bootlegged" tapes which were reproductions of the original recordings marketed under a different label. See United States v. Shultz, 482 F.2d 1179, 1180 (6th Cir. 1973). Through August 1974, MVC had sold over 174,000 duplicates of some 123 albums produced by A & M Records, Inc. and C.B.S., Inc. In addition to duplicating the albums of plaintiffs Cash and Wynette, MVC copied and distributed albums of such performers as Chicago, Bob Dylan, Carole King, Paul Simon and Barbra Streisand.
 
 
 2
 The claims were based on unfair competition, violation of the Lanham Act, and commercial misappropriation of the names of plaintiffs Tammy Wynette and Johnny Cash. The district court found MVC guilty of common law unfair competition, granted an injunction against further duplication and distribution of pirated recordings by MVC, and awarded plaintiffs compensatory damages of $120,000. The district court did not reach the Lanham Act claim for injunctive relief since it had awarded such relief on the basis of unfair competition. The court declined to hold defendant Donald Merry personally liable for the damages on the basis of the alter ego doctrine, finding that he had not blatantly disregarded the corporate form in conducting the business.
 
 
 3
 Plaintiffs appeal, contending that the district court erred in failing to hold Donald Merry personally liable for the damages and in failing to award punitive damages. MVC cross appeals, contending that the district court erred in finding that it had committed an actionable wrong and in enjoining its operations.
 
 
 4
 We conclude that the district court erred in declining to hold defendant Merry personally liable for the damages. In all other respects, the judgment of the district court is affirmed.
 
 I.
 
 5
 The instant case involves sound recordings fixed prior to February 15, 1972, the effective date of Public Law 92-140, § 3, 85 Stat. 391, which accorded limited copyright protection to the manufacturers of musical recordings "fixed, published, and copyrighted" after that date.[3] There were no Michigan statutes governing the alleged wrongful acts of MVC at the time this cause of action arose. Subsequent to the filing of this action, Michigan enacted Mich.Comp.L.Ann. § 752.781-85 (Supp.1977) which makes record piracy a crime. Most of the states have enacted legislation making record piracy a crime. In the absence of a statute, any protectible property rights plaintiffs possess must derive from common law. Although no Michigan decisions address the issue at bar,[4] Michigan courts follow the general law of unfair competition. See Tas-T-Nut Co. v. Variety Nut & Date Co., 245 F.2d 3, 8 (6th Cir. 1957); Marion Laboratories, Inc. v. Michigan Pharmacal Corp., 338 F.Supp. 762, 767 (E.D.Mich.1972), aff'd mem., 473 F.2d 910 (6th Cir. 1973). As a court sitting in an action based upon diversity of citizenship, the district court was required to determine whether the Supreme Court of Michigan would find MVC's conduct actionable on the basis of common law unfair competition. Ann Arbor Trust Co. v. North American Co., 527 F.2d 526 (6th Cir. 1975), cert. denied, 425 U.S. 933, 96 S.Ct. 2206, 48 L.Ed.2d 818 (1976).
 
 
 6
 We conclude that the district court did not err in finding a common law right against unfair competition as have various state courts confronted with the identical issue. See, e. g., Gai Audio of New York, Inc. v. Columbia Broadcasting System, Inc., 27 Md.App. 172, 340 A.2d 736 (1975); Columbia Broadcasting System, Inc. v. Melody Recordings, Inc., 134 N.J.Super. 368, 341 A.2d 348 (1975); Mercury Record Productions, Inc. v. Economic Consultants, Inc., 64 Wis.2d 163, 218 N.W.2d 705 (1974), appeal dismissed, 420 U.S. 914, 95 S.Ct. 1107, 43 L.Ed.2d 386 (1975). These decisions generally rely upon and are fully consistent with Supreme Court decisions concerning unfair competition and commercial misappropriation. See, e. g., Goldstein v. California, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973); Compco Corp. v. Day Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964); Sears Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918).
 
 
 7
 We find no merit in MVC's contentions that congressional activity in the field of copyright law preempts the area and precludes relief on the basis of common law unfair competition. See Goldstein v. California, supra, 412 U.S. 546, 551-52, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973); Mercury Record Productions, Inc. v. Economic Consultants, Inc., supra, 64 Wis.2d 163, 179, 218 N.W.2d 705, 712 (1974), appeal dismissed, 420 U.S. 914, 95 S.Ct. 1107, 43 L.Ed.2d 386 (1975); 1 Nimmer § 35.225 (1976). Likewise, we find no merit in MVC's contention that even if plaintiffs do possess common law property rights in the subject recordings, such rights were extinguished when the recordings were distributed. In disposing of a similar argument in International News Service v. Associated Press, supra, 248 U.S. 215, 236, 39 S.Ct. 68, 71, 63 L.Ed. 211 (1918), the Supreme Court stated:
 
 
 8
 The question here is not so much the rights of either party as against the public but their rights as between themselves. See Morison v. Moat, 9 Hare, 241, 258. And, although we may and do assume that neither party has any remaining property interest as against the public in uncopyrighted news matter after the moment of its first publication, it by no means follows that there is no remaining property interest in it as between themselves. For, to both of them alike, news matter, however little susceptible of ownership or dominion in the absolute sense, is stock in trade, to be gathered at the cost of enterprise, organization, skill, labor, and money, and to be distributed and sold to those who will pay money for it, as for any other merchandise. Regarding the news, therefore, as but the material out of which both parties are seeking to make profits at the same time and in the same field, we hardly can fail to recognize that for this purpose, and as between them, it must be regarded as quasi property, irrespective of the rights of either as against the public.
 
 
 9
 See also Mercury Record Productions, Inc. v. Economic Consultants, Inc., supra, 64 Wis.2d 163, 182-84, 218 N.W.2d 705, 714-15 (1974), appeal dismissed, 420 U.S. 914, 95 S.Ct. 1107, 43 L.Ed.2d 386 (1975).
 
 II.
 
 10
 The district court declined to hold defendant Merry personally liable for the damages on the basis of the alter ego doctrine, finding that there was insufficient evidence to justify piercing the corporate veil. Plaintiffs, on the other hand, argue that the district court erred in failing to hold Merry personally liable for his tortious actions. We agree.
 
 
 11
 It is well established that a corporate officer or agent is personally liable for torts committed by him even though he was acting for the benefit of the corporation. See Davis H. Elliot Co., Inc. v. Caribbean Utilities Co., Ltd., 513 F.2d 1176, 1182 (6th Cir. 1975); Allen v. Morris Building Co., 360 Mich. 214, 218, 103 N.W.2d 491, 493 (1960); Warren Tool Co. v. Stephenson, 11 Mich.App. 274, 300-01, 161 N.W.2d 133, 148 (1968); 3A Fletcher, Cyclopedia of the Law of Private Corporations § 1135, at 202.203 (1975); Restatement (Second) of Agency § 343 (1957). Various courts have imposed personal liability on corporate officers involved in record piracy similar to that involved in the present case. See, e. g., A & M Records, Inc. v. Heilman, 75 Cal.App.3d 554, 142 Cal.Rptr. 390 (1977); Gai Audio of New York, Inc. v. Columbia Broadcasting System, Inc., supra, 27 Md.App. 172, 206, 340 A.2d 736, 756 (1975); United Artists Records, Inc. v. Eastern Tape Corp., 19 N.C.App. 207, 215, 198 S.E.2d 452, 457 (1973). We conclude that the district court erred in failing to hold defendant Merry personally liable for his wrongful conduct.
 
 III.
 
 12
 Finally plaintiffs contend that the district court erred in failing to award punitive damages. Various courts have awarded punitive damages in record piracy cases similar to the present case. See, e. g., A & M Records, Inc. v. Heilman, supra, 75 Cal.App.3d 554, 142 Cal.Rptr. 390, 401 (1977); Gai Audio of New York, Inc. v. Columbia Broadcasting System, Inc., supra, 27 Md.App. 172, 203, 340 A.2d 736, 754 (1975); United Artists Records, Inc. v. Eastern Tape Corp., supra, 19 N.C.App. 207, 212, 198 S.E.2d 452, 456 (1973). We conclude, however, that the district court did not err in declining to award punitive damages on the facts of the present case.
 
 
 13
 The decision of the district court with respect to the personal liability of Donald Merry is reversed. The case is remanded with instructions to enter judgment against Merry. The judgment of the district court is otherwise affirmed. The costs of this appeal are assessed against M.V.C. Distributing Corp. and Donald Merry.
 
 
 
 [1]
 Plaintiffs include A & M Records, Inc., C.B.S., Inc., Virginia Wynette Jones (Tammy Wynette) and John R. Cash (Johnny Cash)
 
 
 [2]
 Defendants include M.V.C. Distributing Corporation, Sicom Electronics Corporation, and Donald Merry, the principal of M.V.C
 
 
 [3]
 See 1 M. Nimmer, The Law Of Copyright § 35, at 246.3 n. 3, § 109.20 (1975) (hereinafter cited as Nimmer). Fixation occurs "when the complete series of sounds constituting the work is first produced on a final master recording that is later reproduced in published copies." 37 C.F.R. § 202.15a(b)
 
 
 [4]
 Cf. Gilligham v. Ray, 157 Mich. 488, 491, 122 N.W. 111, 112 (1909)